UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ALLISON POULSON, individually and on behalf of all others similarly situated, <br><br> v. <br><br> PEPSICO, INC. d/b/a PFS and FRITO-LAY, INC. | **Case No. 1:22-cv-00725** <br> FED. R. CIV. P. 23 Class Action |

**PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT**

### SUMMARY

1. Like many other companies across the United States, PepsiCo and Frito-Lay's timekeeping and payroll systems were affected by the hack of Kronos in 2021.

2. That hack led to problems in timekeeping and payroll throughout PepsiCo and Frito-Lay's organization.

3. As a result, PepsiCo and Frito-Lay's workers who were not exempt from the overtime requirements under Indiana law, were not paid for all hours worked or were not paid their proper overtime premium after the onset of the Kronos hack.

4. Allison Poulson is one such PepsiCo and Frito-Lay worker.

5. PepsiCo and Frito-Lay could have easily implemented a system for recording hours and paying wages to non-exempt employees until issues related to the hack were resolved.

6. But they didn't. Instead, PepsiCo and Frito-Lay used prior pay periods or reduced payroll estimates to avoid paying wages and proper overtime to these non-exempt hourly and salaried employees.

7. PepsiCo and Frito-Lay pushed the cost of the Kronos hack onto the most economically vulnerable people in its workforce.

8. The burden of the Kronos hack was made to fall on front-line workers—average Americans—who rely on the full and timely payment of their wages to make ends meet.

9. PepsiCo and Frito-Lay's failure to pay wages, including proper overtime, for all hours worked violates the the Indiana Minimum Wage Law (IMWL), I.C. § 22-2-2 *et seq.*, and the Indiana Wage Payment Statute (IWPS), I.C. § 22-2-5 *et seq.*

10. Poulson brings this lawsuit to recover these unpaid overtime wages and other damages owed by PepsiCo and Frito-Lay to her and the non-overtime-exempt workers like her, who were the ultimate victims of not just the Kronos hack, but also PepsiCo and Frito-Lay's decision to make its front line workers bear the economic burden for the hack.

11. This action seeks to recover the unpaid wages and other damages owed by PepsiCo and Frito-Lay to all these workers, along with the penalties, interest, and other remedies provided by Indiana law.

## JURISDICTION & VENUE

12. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship exists between the Parties and the amount in controversy exceeds $75,000.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events at issue occurred in this District.

14. Poulson worked for PepsiCo and Frito-Lay in this District.

## PARTIES

15. **Plaintiff Allison Poulson** is a natural person.

16. Poulson has been, at all relevant times, an employee of PepsiCo and Frito-Lay.

17. Poulson has worked for PepsiCo and Frito-Lay since February 2021.

18. Poulson represents a class of similarly situated workers under Indiana law pursuant to Federal Rule of Civil Procedure 23. This "Indiana Class" is defined as:

> **All current or former hourly and salaried employees of PepsiCo, including its subsidiaries and alter egos such as Frito-Lay, who were not exempt from overtime pay and who worked in Indiana at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

19. Throughout this Complaint, the Indiana Class members are also referred to as the "Similarly Situated Workers."

20. **Defendant PepsiCo, Inc. d/b/a PFS ("PepsiCo")** is a foreign corporation.

21. PepsiCo maintains its headquarters and principal place of business in New York.

22. PepsiCo conducts business in a systematic and continuous manner throughout Indiana and this District.

23. PepsiCo may be served by service upon its registered agent, **CT Corporation System, 334 North Senate Ave., Indianapolis, IN 46204**, or by any other method allowed by law.

24. The Indiana Business ID of PepsiCo is 1988020501.

25. PepsiCo maintains at least one assumed name in Indiana under which it conducts business with the Indiana Business ID 1988020501.

26. The assumed name under which it conducts business is one, but not all of, PepsiCo's "alter egos."

27. **Defendant Frito-Lay, Inc. ("Frito-Lay")** is a foreign corporation.

28. Frito-Lay maintains its headquarters and principal place of business in Texas.

29. Frito-Lay conducts business in a systematic and continuous manner throughout Indiana and this District.

30. Frito-Lay may be served by service upon its registered agent, **CT Corporation System, 334 North Senate Ave., Indianapolis, IN 46204**, or by any other method allowed by law.

31. The Indiana Business ID of PepsiCo is 2010031600089.

32. At all relevant times, PepsiCo exerted operational control over its subsidiaries and alter egos.

33. At all relevant times, PepsiCo substantially controlled the terms and conditions of employment for workers of its subsidiaries and alter egos.

34. At all relevant times, PepsiCo had a common control and management of labor relations regarding employees of its subsidiaries and alter egos.

35. PepsiCo employed and/or jointly employed, with its subsidiaries and alter egos, Poulson and the Similarly Situated Workers.

36. PepsiCo and its subsidiaries and alter egos are joint employers for purposes of Indiana law.

37. At all relevant times, Frito-Lay exerted operational control over its subsidiaries and alter egos.

38. At all relevant times, Frito-Lay substantially controlled the terms and conditions of employment for workers of its subsidiaries and alter egos.

39. At all relevant times, Frito-Lay had a common control and management of labor relations regarding employees of its subsidiaries and alter egos.

40. Frito-Lay employed and/or jointly employed, with its subsidiaries and alter egos, Poulson and the Similarly Situated Workers.

41. Frito-Lay and its subsidiaries and alter egos are joint employers for purposes of Indiana law.

42. PepsiCo and Frito-Lay employed and/or jointly employed, with its subsidiaries and alter egos, Poulson and the Similarly Situated Workers.

43. PepsiCo and Frito-Lay are joint employers for purposes of Indiana law.

**FACTS**

44. PepsiCo and Frito-Lay are a food, snack, and beverage corporation.

45. Many of PepsiCo and Frito-Lay's employees are paid by the non-overitme-exempt hourly and salaried workers.

46. Many of PepsiCo and Frito-Lay's employees are paid by the non-overitme-exempt hourly and salaried workers.

47. Since at least 2021, PepsiCo and Frito-Lay have used timekeeping software and hardware operated and maintained by Kronos.

48. On or about December 11, 2021, Kronos was hacked with ransomware.

49. The Kronos interfered with its clients, including PepsiCo and Frito-Lay's, ability to use Kronos's software and hardware to track hours and pay employees.

50. Since the onset of the Kronos hack, PepsiCo and Frito-Lay have not kept accurate track of the hours that Poulson and Similarly Situated Workers have worked.

51. Instead, PepsiCo and Frito-Lay have used various methods to estimate the number of hours Poulson and Similarly Situated Workers work in each pay period.

52. For example, PepsiCo and Frito-Lay issued paychecks based on the workers' scheduled hours, or simply duplicated paychecks from pay periods prior to the Kronos hack.

53. This means that employees who were non-exempt and who worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

54. Even if certain overtime hours were paid, the pay rate would be less than the full overtime premium.

55. Many employees were not even paid their non-overtime wages for hours worked before 40 in a workweek.

56. Poulson is one such employee.

57. Instead of paying Poulson for the hours she actually worked (including overtime hours), PepsiCo and Frito-Lay simply paid based on estimates of time or pay, or based upon arbitrary calculations and considerations **other than** Poulson's actual hours worked and regular pay rates.

58. In some instances, Poulson was paid portions of overtime hours worked, but the overtime rate was not at the proper overtime premium of at least 1.5x the regular rate of pay, including required adjustments for shift differentials and non-discretionary bonsuses.

59. In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other adjustments required by law.

60. PepsiCo and Frito-Lay know they have to pay proper overtime premiums to non-exempt hourly and salaried employees.

61. PepsiCo and Frito-Lay know this because, prior to the Kronos hack, they routinely paid these workers for all overtime hours at the proper overtime rates.

62. PepsiCo and Frito-Lay know they have to pay the wages they agreed to pay its employees.

63. PepsiCo and Frito-Lay know this because, prior to the Kronos hack, they routinely paid these workers for all hours worked at the rates they agreed to pay them.

64. PepsiCo and Frito-Lay could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

65. Instead of accurately tracking hours and paying employees wages and overtime, PepsiCo and Frito-Lay decided to arbitrarily pay these employees, without regard to the wages and overtime they were owed.

66. It was feasible for PepsiCo and Frito-Lay to have their employees and managers report accurate hours so they could be paid for the work they did for the company.

67. But they chose not to do that.

68. In other words, PepsiCo and Frito-Lay pushed the effects of the Kronos hack onto the backs of their most economically vulnerable workers, making sure they kept the money owed to those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

69. Poulson is one of PepsiCo and Frito-Lay's employees who had to shoulder the burden of this decision.

70. Poulson was and is a non-exempt hourly employee of PepsiCo and Frito-Lay.

71. Poulson regularly works over 40 hours per week for PepsiCo and Frito-Lay.

72. Poulson's normal, pre-Kronos hack hours are reflected in PepsiCo and Frito-Lay's records.

73. Since the Kronos hack, PepsiCo and Frito-Lay have not paid Poulson for her actual hours worked each week.

74. Since the hack took place, PepsiCo and Frito-Lay have not been accurately recording the hours worked by Poulson and its other workers.

75. Even though PepsiCo and Frito-Lay has had Poulson record and submit her hours, PepsiCo and Frito-Lay have not issued proper payment for all hours worked.

76. Even when PepsiCo and Frito-Lay have issued payment to Poulson for any overtime, the overtime is not calculated based on Poulson's regular rates, as required by Indiana law.

77. PepsiCo and Frito-Lay were aware of the overtime requirements of Indiana law.

78. PepsiCo and Frito-Lay nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Poulson.

79. PepsiCo and Frito-Lay's failure to pay overtime to these non-exempt workers was, and is, a willful violation of Indiana law.

80. The full overtime wages owed to Poulson and the Similarly Situated Workers became "unpaid" when the work for PepsiCo and Frito-Lay was done—that is, on Poulson and the Similarly Situated Workers' regular paydays.

81. At the time PepsiCo and Frito-Lay failed to pay Poulson and the Similarly Situated Workers in full for their overtime hours by their regular paydays, PepsiCo and Frito-

Lay became liable for all prejudgment interest, liquidated damages, penalties, and any other damages owed under Indiana law.

82. In other words, there is no distinction between late payment and nonpayment of wages under the law.

83. Even if PepsiCo and Frito-Lay made any untimely payment of unpaid wages due and owing to Poulson or the Similarly Situated Workers, any alleged payment was not supervised by the Department of Labor or any court.

84. The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law.

85. Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to PepsiCo and Frito-Lay's acts and omissions resulting in the unpaid wages in the first place.

86. Poulson and the Similarly Situtated Workers remain uncompensated for the wages and other damages owed by PepsiCo and Frito-Lay under Indiana law.

## CLASS ACTION ALLEGATIONS

87. Poulson incorporates all other allegations.

88. The illegal practices PepsiCo and Frito-Lay imposed on Poulson were likewise imposed on the Indiana Class members.

89. Numerous other individuals who worked for PepsiCo and Frito-Lay were were not properly compensated for all hours worked, as required by Indiana law.

90. The Indiana Class is so numerous that joinder of all members of the class is impracticable.

91. PepsiCo and Frito-Lay imposed uniform practices and policies on Poulson and the Indiana Class members regardless of any individualized factors.

92. Based on her experience and tenure with PepsiCo and Frito-Lay, as well as coverage of the Kronos hack, Poulson is aware that PepsiCo and Frito-Lay's illegal practices were imposed on the Indiana Class members.

93. Indiana Class members were all not paid proper overtime when they worked in excess of 40 hours per week.

94. Indiana Class members were all not paid their contractually agreed wages.

95. PepsiCo and Frito-Lay's failure to pay wages and overtime compensation in accordance with Indiana law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Indiana Class members.

96. PepsiCo and Frito-Lay's failure to pay contractually agreed wages and overtime compensation results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Indiana Class members.

97. Poulson's experiences are therefore typical of the experiences of the Indiana Class members.

98. Poulson has no interest contrary to, or in conflict with, the members of the Indiana Class. Like each member of the proposed class, Poulson has an interest in obtaining the unpaid wages and other damages owed under the law.

99. A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

100. Absent this action, many Indiana Class members likely will not obtain redress of their injuries, and PepsiCo and Frito-Lay will reap the unjust benefits of violating Indiana law.

101. Furthermore, even if some of the Indiana Class members could afford individual litigation against PepsiCo and Frito-Lay, it would be unduly burdensome to the judicial system.

102. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

103. The questions of law and fact common to each of the Indiana Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

   a. Whether the Indiana Class members were paid for all of their hours worked each week;

   b. Whether the Indiana Class members were not paid overtime at 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek;

   c. Whether PepsiCo and Frito-Lay's failure to pay wages and overtime at the rates required by law violated the IMWL; and

   d. Whether PepsiCo and Frito-Lay's failure to issue timely payment to the Indiana Class members violated the IWPS.

104. Poulson's claims are typical of the Indiana Class members. Poulson and the Indiana Class members have all sustained damages arising out of PepsiCo and Frito-Lay's illegal and uniform employment policies.

105. Poulson knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

106. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

### FIRST CAUSE OF ACTION—VIOLATIONS OF THE IMWL

107. Poulson incorporates all other allegations.

108. The conduct alleged in this Complaint violates the IMWL, I.C. § 22-2-2 *et seq.*

109. PepsiCo was and is an "employer" within the meaning of the IMWL.

110. Frito-Lay was and is an "employer" within the meaning of the IMWL.

111. At all relevant times, PepsiCo and/or Frito-Lay employed Poulson and the other Indiana Class members as "employees" within the meaning of the IMWL.

112. At all relevant times, PepsiCo employed two or more employees each week.

113. At all relevant times, Frito-Lay employed two or more employees each week.

114. The IMWL requires employers like PepsiCo and Frito-Lay to pay overtime to all non-exempt employees.

115. Poulson and the other Indiana Class members are non-exempt employees who are entitled to be paid overtime for all overtime hours worked at a rate of no less than 1.5x their regular rate.

116. Within the applicable limitations period, PepsiCo and Frito-Lay had a policy and practice of failing to pay proper overtime to the Indiana Class members for their hours worked in excess of 40 hours per week.

117. As a result of PepsiCo and Frito-Lay's failure to pay proper overtime to Poulson and the Indiana Class members for work performed in excess of 40 hours in a workweek, PepsiCo and Frito-Lay violated the IMWL.

118. Poulson and the Indiana Class members are entitled to overtime wages under the IMWL in an amount equal to 1.5x their regular rates of pay, attorneys' fees, costs, liquidated damages, and all other legal and equitable relief provided under the IMWL.

**SECOND CAUSE OF ACTION—VIOLATIONS OF THE IWPS**

119. Poulson incorporates all other allegations.

120. The conduct alleged in this Complaint violates the IWPS, I.C. § 22-2-5 *et seq.*

121. PepsiCo was and is an "employer" within the meaning of the IWPS.

122. Frito-Lay was and is an "employer" within the meaning of the IWPS.

123. At all relevant times, PepsiCo employed Poulson and the other Indiana Class members as "employees" within the meaning of the IWPS.

124. At all relevant times, Frito-Lay employed Poulson and the other Indiana Class members as "employees" within the meaning of the IWPS.

125. The IMWL requires employers like PepsiCo and Frito-Lay to pay for all hours worked, including overtime, to all non-exempt employees.

126. PepsiCo and Frito-Lay failed to pay earned wages to Poulson and the Indiana Class members within 10 business days.

127. PepsiCo and Frito-Lay had a policy and practice of failing to make timely payments to the Poulson and the Indiana Class members.

128. PepsiCo and Frito-Lay did not act in good faith in failing to pay earned wages to Poulson and the Indiana Class members and in violating the IWPS.

129. As a result of PepsiCo and Frito-Lay's failure to pay earned wages to Poulson and the Indiana Class members within the time required by the IWPS, PepsiCo and and Frito-Lay violated the IWPS.

130. Poulson and the Indiana Class members are entitled to recover all wages due to them, liquidated damages in an amount equal to 2x of the wages due to them, attorneys' fees, costs, and all other legal and equitable relief provided under the IWPS.

**RELIEF SOUGHT**

Poulson prays for judgment against PepsiCo as follows:

    a.    For an order certifying a class action for the Indiana law claims;

    b.    For an order finding PepsiCo and Frito-Lay liable for violations of Indiana wage laws with respect to Poulson and all Indiana Class members covered by this case;

    c.    For a judgment awarding all unpaid wages, liquidated damages, and penalties under Indiana law to Poulson and all Indiana Class members covered by this case;

    d.    For an equitable accounting and restitution of wages due to Poulson and all Indiana Class members members covered by this case;

    e.    For a judgment awarding costs of this action to Poulson and all Indiana Class members covered by this case;

    f.    For a judgment awarding attorneys' fees to Poulson and all Indiana Class members covered by this case;

    g.    For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Poulson and all Indiana Class members covered by this case; and

    h.    For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: ***/s/ Matthew S. Parmet***
      **Matthew S. Parmet**
      TX Bar # 24069719
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone 713 999 5228
matt@parmet.law

**Attorneys for Plaintiff**